IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

ABDOULAYE BARRY,                :    No. 3:25cv960
                                :
           Petitioner           :    (Judge Munley)
                                :
      v.                        :
                                :
WARDEN GREENE,                  :
                                :
           Respondent           :
............................................................................................

## MEMORANDUM

Petitioner Abdoulaye Barry ("Barry") initiated the above-captioned action by filing a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. (Doc. 1). Barry challenges the decision of the Federal Bureau of Prisons ("BOP") to exclude him from consideration for placement in a Residential Re-entry Center ("RRC") or home confinement due to his alien status. (Id. at 6; Doc. 1-1). On June 26, 2025, respondent filed a response to the petition, arguing that the petition should be dismissed for failure to exhaust administrative remedies, that this court does not have jurisdiction to review the BOP's decision whether to transfer an inmate to prerelease custody, and that the petition fails on its merits because Barry does not have a right to placement in prerelease custody. (Doc. 7). Barry failed to timely file a traverse. Therefore, on July 11, 2025, the court issued a memorandum and order dismissing the habeas petition. (Docs. 8, 9).

On the same day the court issued its memorandum and order, Barry's traverse was received and docketed by the Clerk of Court. (Doc. 10).

On July 25, 2025, Barry filed a motion pursuant to Federal Rule of Civil Procedure 59(e) arguing, *inter alia*, that the court issued its July 11, 2025 decision before considering his traverse. (Doc. 11). While there is nothing in Barry's traverse that alters the court's prior determination dismissing the habeas petition, the court will vacate the prior memorandum and order (Docs. 8, 9) and issue this memorandum and attendant order to reflect consideration of Barry's submission. The court will also deny Barry's Rule 59(e) motion as he has not presented the court with any changes in controlling law, newly discovered evidence, or a clear error of law or fact that would necessitate a different ruling in order to prevent a manifest injustice. See FED. R. CIV. P. 59(e); Lazaridis v. Wehmer, 591 F.3d 666, 669 (3d Cir. 2010).

I. **Background**

On February 10, 2023, following a jury trial in the United States District Court for the Northern District of Georgia, Barry was found guilty of access device fraud, conspiracy to commit access device fraud, and aggravated identity theft. See United States v. Barry, No. 1:21-cr-385 (N.D. Ga.), Doc. 194. On June 21, 2023, Barry was sentenced to a 69-month term of imprisonment. See

id., Doc. 234. According to the BOP's Inmate Locator, Barry has a projected release date of February 15, 2027. See https://www.bop.gov/inmateloc/.

The Administrative Remedy Generalized Retrieval reveals that, while in BOP custody, Barry has filed four administrative remedies. (Doc. 7-4, Administrative Remedy Generalized Retrieval). Of those four administrative remedies, only one—number 1239811-F1—concerns the claims raised in the instant habeas petition. (Id. at 4). The remedy was denied at the institution level and Barry did not file an appeal to the Regional or Central Offices. (Id.).

On April 11, 2025, BOP officials reviewed Barry for prerelease placement under the five factors of the Second Chance Act of 2007, codified at 18 U.S.C. §§ 3621 and 3624. (Doc. 7-2, Declaration of M. Forsburg, BOP Case Manager, ("Forsburg Decl.") at 3 ¶ 7; Doc. 7-5, Individualized Needs Plan). The unit team considered: (1) the resources of the facility contemplated; (2) the nature and circumstances of the offense; (3) the history and characteristics of the inmate; (4) any court statement; and (5) any pertinent policy statement. Id. As a result of the review, the unit team determined that Barry did not qualify for prerelease placement under the Second Chance Act due to his status as an Institution Hearing Program participant, his pending unresolved charges, and his public safety factor assignment of deportable alien. (Doc. 7-2, Forsburg Decl. at 3 ¶ 9; Doc. 7-5, Individualized Needs Plan).

3

## II. Discussion

### A. Exhaustion

While there is no statutory exhaustion requirement for habeas corpus petitions brought pursuant to Section 2241, the Third Circuit has recognized that "[f]ederal prisoners are ordinarily required to exhaust their administrative remedies before petitioning for a writ of habeas corpus pursuant to [Section] 2241." Moscato v. Federal Bureau of Prisons, 98 F.3d 757, 760 (3d Cir. 1996) (citations omitted); Callwood v. Enos, 230 F.3d 627, 634 (3d Cir. 2000). Exhaustion is required because: "(1) allowing the appropriate agency to develop a factual record and apply its expertise facilitates judicial review; (2) permitting agencies to grant the relief requested conserves judicial resources; and (3) providing agencies the opportunity to correct their own errors fosters administrative autonomy." Moscato, 98 F.3d at 761-62 (citations omitted); Bradshaw v. Carlson, 682 F.2d 1050, 1052 (3d Cir. 1981).

However, exhaustion of administrative remedies is not required where these underlying reasons for exhaustion would not be served. See Coleman v. U.S. Parole Comm'n, 644 F. App'x 159, 162 (3d Cir. 2016) (unpublished). "For example, exhaustion may be excused where it 'would be futile, if the actions of the agency clearly and unambiguously violate statutory or constitutional rights, or if the administrative procedure is clearly shown to be inadequate to prevent

4

irreparable harm.'" Brown v. Warden Canaan USP, 763 F. App'x 296, 297 (3d Cir. 2019) (unpublished) (quoting Lyons v. U.S. Marshals, 840 F.2d 202, 205 (3d Cir. 1988)).

In order to exhaust administrative remedies, a federal inmate must comply with the procedural requirements of the BOP's administrative remedy process, which are set forth in the Code of Federal Regulations. See generally 28 C.F.R. §§ 542.10-542.19. Under these regulations, an inmate shall first attempt informal resolution of his complaint with staff and, if the inmate is unable to resolve his complaint informally, he shall submit a formal, written request on the proper form to the designated staff member. See id. §§ 542.13-542.14. If the inmate is not satisfied with the Warden's response, the inmate shall then submit an appeal to the Regional Director, using the appropriate form. See id. § 542.15(a). And, finally, if the inmate is not satisfied with the Regional Director's response, then the inmate shall submit an appeal to the Office of the General Counsel, located in the BOP Central Office, using the appropriate form. See id. An inmate is not deemed to have exhausted his administrative remedies until his complaint has been pursued at all levels. See id. (explaining that an "[a]ppeal to the General Counsel is the final administrative appeal").

Here, the record reflects that, although Barry filed one administrative remedy concerning FSA eligibility—number 1239811-F1—he undisputably failed

to properly exhaust that remedy. (See Doc. 7-4). Barry's Administrative Remedy Generalized Retrieval report demonstrates that he never appealed the denial of administrative remedy 1239811-F1 to the Regional or Central Offices—the necessary steps to fully exhaust his administrative remedy. (Id.; see also Doc. 7-2, Forsburg Decl. at 3 ¶ 5). Rather than comply with the exhaustion requirements, Barry bypassed the statutorily mandated procedures and, instead, filed the instant habeas petition in federal court.

Barry concedes his failure to exhaust and admits that he did not file a final appeal of the relevant administrative remedy. (Doc. 1, at 3; Doc. 1-1, at 1). In a sweeping and unsupported statement, Barry asserts that exhaustion should be excused because the petition challenges the legal validity of a BOP policy that makes him categorically ineligible for placement in prerelease custody. (Doc. 10, at 1). However, the record reflects that the BOP individually reviewed the five factors required by 18 U.S.C. § 3621(b) in refusing to transfer Barry to prerelease custody. (Doc. 7-5). Barry does not offer any plausible argument that exhaustion should be excused. Further, Barry has not identified any BOP actions that would clearly and unambiguously violate statutory or constitutional rights, and he has not set forth any facts or advanced any argument that would permit this court to find that exhaustion of administrative remedies would subject him to irreparable injury.

Because Barry did not fully exhaust his administrative remedies before petitioning this court, and because no exception to the exhaustion requirement applies here, his Section 2241 petition must be dismissed.

B.   Barry's Claim is Not Cognizable under Section 2241

Assuming that administrative exhaustion could be excused, Barry's claim is not cognizable under Section 2241. Barry is challenging the BOP's alleged failure to designate him to an RRC. (Doc. 1, at 6; Doc. 1-1). However, this Section 2241 challenge, which implicates the execution of his sentence (i.e., where the remainder of his sentence is served), is not cognizable on habeas review.

The core of habeas corpus usually involves a challenge to the fact or duration of confinement. See Preiser v. Rodriguez, 411 U.S. 475, 487-88, 500 (1973). In Woodall v. Federal Bureau of Prisons, 432 F.3d 235 (3d Cir. 2005), the United States Court of Appeals for the Third Circuit held that—in addition to the fact or duration of confinement—prisoners may also challenge the "execution" of their sentences in a petition under 28 U.S.C. § 2241. See Woodall, 432 F.3d at 241-44. The Woodall Court acknowledged that "the precise meaning of 'execution of the sentence' is hazy." Id. at 242.

In Cardona v. Bledsoe, 681 F.3d 533 (3d Cir. 2012), the Court of Appeals clarified the jurisdictional boundaries for execution-of-sentence habeas

challenges. In Cardona, the Third Circuit considered whether a claim challenging the BOP's decision to transfer the petitioner to the Special Management Unit—a highly restrictive form of confinement—was cognizable in a Section 2241 habeas petition as a claim challenging the execution of the petitioner's sentence. Cardona, 681 F.3d at 531, 535-37. The court summarized two earlier Third Circuit cases that analyzed what claims could be brought to challenge the execution of a sentence under Section 2241—Woodall and McGee v. Martinez, 627 F.3d 933 (3d Cir. 2010). The court reasoned that the claims at issue in Woodall and McGee were cognizable because they "both challenged BOP conduct that conflicted with express statements in the applicable sentencing judgment." Cardona, 681 F.3d at 536. "That is, both petitions claimed that the BOP was not properly 'put[ting] into effect or carry[ing] out' the directives of the sentencing judgment." Id. (quoting Woodall, 432 F.3d at 243). The court in Cardona thus held, "[i]n order to challenge the execution of [a] sentence under § 2241, [a petitioner] would need to allege that BOP's conduct was somehow inconsistent with a command or recommendation in the sentencing judgment." Id. at 537. Because the petitioner's claim did not argue that such an inconsistency was present, the court found that he was not properly challenging the "execution" of his sentence and held that it was not a cognizable Section 2241 habeas claim. Id. at 537, 538.

8

Similarly, Barry has not alleged that the BOP's conduct regarding prerelease custody is inconsistent with an express command or recommendation in his judgment of sentence. Barry's sentencing judgment does not address or discuss prerelease custody. See Barry, No. 1:21-cr-385, Doc. 234. Accordingly, Barry's habeas petition does not properly challenge the "execution" of his sentence and this court lacks jurisdiction over his claim. See Cardona, 681 F.3d at 537, 538. As such, the Section 2241 petition must be dismissed.

C.   Merits of the Petition

Finally, assuming that exhaustion could be excused and that this court has jurisdiction over Barry's claim, the petition fails on the merits.

Transfer of BOP prisoners to prerelease custody is governed by 18 U.S.C. § 3624 and 18 U.S.C. § 3621. Section 3624 states, in relevant part:

> The Director of the Bureau of Prisons shall, to the extent practicable, ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months), under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community. Such conditions may include a community correctional facility.

18 U.S.C. § 3624(c)(1). The decision whether to transfer an inmate to prerelease custody, however, is left to the discretion of the BOP. 18 U.S.C. § 3624(c)(4). When exercising this discretion, the BOP must conduct an individualized

assessment of whether an inmate should be transferred to prerelease custody

based on the following factors:

> (1) the resources of the facility contemplated;
> (2) he nature and circumstances of the offense;
> (3) the history and characteristics of the prisoner;
> (4) any statement by the court that imposed the sentence--
>   (A) concerning the purposes for which the sentence to imprisonment was determined to be warranted; or
>   (B) recommending a type of penal or correctional facility as appropriate; and
> (5) any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28.

18 U.S.C. § 3621(b); Woodall, 432 F.3d at 247.

The record in this case clearly establishes that Barry's unit team gave him individualized consideration consistent with the five factors of § 3621(b). (Doc. 7-5). Specifically, the unit team considered and evaluated the five factors as follows: (1) facility resources: RRCs have limited bed space availability and must be used judiciously to provide re-entry services to as many inmates as possible; (2) offense: access device fraud and aggravated identity theft; (3) prisoner: average programming, clear conduct; (4) court statement: no recommendations regarding RRC consideration; and (5) sentencing commission: United States Sentencing Commission has not issued any policy statements related to BOP prerelease RRC procedure. (Doc. 7-5, at 4). The unit team also found that Barry does not qualify for prerelease placement under the Second Chance Act due to

his status as an Institution Hearing Program participant, his pending unresolved charges, and his public safety factor assignment of deportable alien. (Id.).

Barry's purported disagreement with the BOP's recommendation does not establish a constitutional violation, as nothing in § 3642 or § 3621(b) entitles an inmate to any guaranteed placement in an RRC. See Woodall, 432 F.3d at 244-51 (holding, in exercising its discretion to make halfway house placement decisions, the Bureau must consider the factors set forth in § 3621(b); "[h]owever, that the [Bureau] may assign a prisoner to a halfway house does not mean that it must."); see also Beckley v. Miner, 125 F. App'x 385, 389 (3d Cir. 2005) (holding, "[i]t is well settled, and the parties agree, that the Bureau has nearly exclusive jurisdiction to classify and transfer prisoners.").

### III. Conclusion

For all the foregoing reasons, the court will dismiss Barry's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 and deny his Rule 59(e) motion.

An appropriate order shall issue.

BY THE COURT:

JUDGE JULIA K. MUNLEY
United States District Court

Dated:   October 22, 2025

11